UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GABRIEL M GONZALES, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-201 |
| | § | |
| G. L. CURRIE, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS ACTION**

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C.

§ 1983.  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321

(1996), any prisoner action brought under federal law must be dismissed if the complaint

is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

monetary relief from a defendant immune from such relief.  *See* 42 U.S.C. § 1997e(c); 28

U.S.C. §§ 1915(e)(2), 1915A.   Plaintiff's action is subject to screening regardless

whether he prepays the entire filing fee or proceeds as a pauper.  *Ruiz v. United States*,

160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th

Cir. 1998) (per curiam), *cert. denied*, 527 U.S. 1041 (1999).  Plaintiff's *pro se* complaint

must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations

must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v.

Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that plaintiff's claims against defendants alleging harassment, discrimination, and conspiracy to violate his constitutional rights, as well as his retaliation claim against Officer James Hackman, be dismissed with prejudice for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.      Jurisdiction.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.     Background facts and plaintiff's allegations.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and he is currently confined at the McConnell Unit in Beeville, Texas.[1]   He filed his original complaint on July 1, 2013, and named the following McConnell Unit officers and officials as defendants:  (1) Senior Warden G. L. Currie; (2) Assistant Warden Matt Barber; (3) Sergeant D. S. Mayer; (4) Officer James Hackman; and (5) Ms. Candace Moore, the law librarian.  Plaintiff claims that defendants are engaged in a conspiracy to deprive him of his constitutional rights, and to cause him "emotional, psychological, and physical injury," by prolonged "harassment, discrimination, and retaliation," with no justifiable basis.  (D.E. 1 at 4).[2]   In particular, plaintiff complains that he was wrongly accused and found guilty of a false disciplinary

---

[1] Plaintiff is currently serving a 45-year sentence for aggravated sexual assault.

[2] Plaintiff has offered as exhibits to his original complaint copies of his Step 1 and Step 2 grievances, as well as other documentation.  Reference to the exhibits is to the Court's docketing numbers which do not necessarily correspond to plaintiff's page numbering.

charge, and as a consequence thereof, he was held in solitary confinement for five weeks, and lost certain privileges.  Eventually, the disciplinary conviction was set aside, but plaintiff did not regain all of his prior privileges.  He claims further that, in his attempt to regain his craft shop privileges, he filed a grievance against Officer Hackman, and in turn, Officer Hackman retaliated against him by filing a second false disciplinary case.

On August 14, 2013, plaintiff filed a motion for a preliminary injunction and/or temporary restraining order requesting that defendants be enjoined from harassing plaintiff and another inmate, Offender Howard Braden.[3]  (D.E. 13).

On September 10, 2013, a *Spears*[4] hearing was conducted.  The following allegations were made in plaintiff's original complaint (D.E. 1), motion for preliminary injunction (D.E. 13), or at the hearing:

Prior to the incidents complained of herein, plaintiff was classified as a G2, minimum custody trustee housed in General Population.  With this classification, plaintiff had more privileges than other offenders, including access to the craft shop.  In fact, plaintiff obtained craft shops privileges in 1992, and he had been participating in the craft shop since that time, working primarily with leather goods.

On October 25, 2012, Sergeant Mayer, an officer with the Safe Prisons Program ("SPP"),[5] questioned plaintiff about an allegation of sexual misconduct between plaintiff

---

[3] On September 11, 2013, Offender Braden filed a motion to intervene in this action.  (See D.E. 15).  Because it is recommended that this action be dismissed, it is also respectfully recommended that all pending motions, including Offender Braden's motion to intervene, be denied.

[4] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

and Offender Howard Braden.  Sergeant Mayer stated that there was a video recording of plaintiff and Offender Braden engaging in a consensual sexual act, and he pressured plaintiff to confess to the sexual misconduct charge.  Plaintiff denied the charge, and in response, Sergeant Mayer ordered that plaintiff be handcuffed and escorted to 11 Building and housed in a solitary cell for pre-hearing detention ("PHD").

On October 30, 2012, Officer Hackman, the craft shop supervisor, informed plaintiff that his craft shop privileges had been revoked as a consequence of the sexual misconduct charge.  (*See* D.E. 1-1 at 2, Disposition of Confiscated Offender Property).  Plaintiff was advised to make arrangements to have his tools sent home, and if he failed to do so, Officer Hackman would dispose of his property.

On October 31, 2012, plaintiff was served with a disciplinary case, Case No. 20130061828, and charged with engaging in a consensual act (oral sex) with Offender Braden, "for the purpose of sexual gratification."  (*See* D.E.1-1 at 4, copy of disciplinary report and hearing record).

On November 1, 2012, a disciplinary hearing was held on the sexual misconduct charge.  The disciplinary hearing officer ("DHO") denied plaintiff his only witness and refused to review the security camera recording that was the only evidence of plaintiff engaging in the prohibited conduct.   The DHO found plaintiff guilty as charged, and as punishment, plaintiff lost 45 days commissary and recreation privileges, visitation privileges were suspended through February 1, 2013, his classification was reduced from

---

[5] The SPP is an anti-extortion, anti-sexual assault initiative which receives state and federal funding.  Sergeant Mayer's job includes investigating anonymous complaints.

G2 to G4, and he lost ten (10) days good conduct time credit.  (D.E. 1-1 at 4). This was the first disciplinary case plaintiff had received in over 12 years.

After being found guilty of the disciplinary offense, on November 1, 2012, plaintiff wrote an I-60 to Officer Hackman requesting that his craft shop property be retained on the unit until after he had an opportunity to challenge his disciplinary conviction by filing his Step 1 and Step 2 grievances.  (D.E. 1-1 at 5-6).  Officer Hackman denied this request.  *Id.* at 8.

On November 13, 2012, plaintiff filed a Step 1 grievance, Grievance No. 2013041826, challenging the sexual misconduct charge. (D.E. 1-1 at 9-10).  On November 30, 2013, Warden Barber denied the grievance stating that plaintiff's counsel substitute had reviewed the video recording, the evidence supported a finding of guilty of sexual misconduct, and all due process protections were afforded.  *Id.* at 10.

On November 27, 2012, Assistant Warden Monroe advised Offender Braden that both his and plaintiff's disciplinary convictions for sexual misconduct were going to be reversed.  (D.E. 1-1 at 16, Affidavit of Offender Braden).  On December 4, 2012, Warden Monroe assured Offender Braden that both he and plaintiff would have their privileges restored, including access to the craft shop.  *Id.*

On December 14, 2012, plaintiff went before a Unit Classification Committee ("UCC").  At the UCC, plaintiff was notified formally that the disciplinary case had been reversed, that his G2 custody status was reinstated, and his time earning classification was restored to S3.  On that same date, plaintiff sent an I-60 to Officer Hackman

requesting that his craft shop privileges be reinstated; Officer Hackman denied plaintiff's request.

On January 14, 2013, plaintiff filed a Step 1 grievance, Grievance No. 2013075536, complaining that his craft shop privileges were unfairly revoked based on the now set-aside disciplinary conviction.  (D.E. 1-1 at 20-21).  On January 14, 2013, Warden Barber denied the grievance stating that the privileges were revoked properly at the time, and even though the disciplinary conviction was set aside, craft shop access is a privilege and can be revoked for any or no reason.[6]  *Id.* at 21.

On February 1, 2013, plaintiff arranged to meet with Officer Hackman to discuss having his craft shop privileges restored.  As he was approaching Officer Hackman's office, he dropped a paper with an address and it was blown by the wind.  As plaintiff was attempting to retrieve the piece of paper, Officer Hackman exited his office and found plaintiff to be "out-of-place."  Despite plaintiff's protestations, Officer Hackman wrote plaintiff a disciplinary case and submitted it to the shift supervisor.  Later that evening, the shift supervisor asked plaintiff about the charge, and after hearing plaintiff's explanation, he gave plaintiff a verbal warning and did not process the out-of-place charge further.

On February 5, 2013, Officer Hackman learned that the out-of-place disciplinary case was not processed, and he re-submitted it.  Officer Hackman specifically told plaintiff that he should never have filed a grievance against him regarding the craft shop.

---

[6] Plaintiff filed a Step 2 appeal, and it was denied.  (D.E. 1-2 at 1-2).

In response, plaintiff filed a Step 1 grievance alleging that Officer Hackman had filed the out-of-place charge in retaliation for plaintiff filing the earlier grievance concerning the craft shop.[7]  (D.E. 1-2 at 3-6).

On February 8, 2013, plaintiff was given a minor disciplinary case for being out of place, Disciplinary Case No. 20130153751.  (D.E. 1-2 at 7).  A disciplinary hearing was held that same day; plaintiff was found guilty, and as punishment he received five (5) days loss of recreation and a verbal reprimand.  Id.  Plaintiff filed Step 1 and Step 2 grievances appealing the decision, but the out-of-place conviction was affirmed.  (D.E. 1-2 at 8-12).

After the reversal of the sexual misconduct case in November/December 2012, plaintiff began submitting I-60s requests to attend the law library.  Initially, Candace Moore, the law librarian, denied his I-60s on the grounds that his file was "flagged" as a result of the sexual misconduct charge, and he was denied law library sessions as a consequence thereof.  Plaintiff filed numerous grievances pointing out that the sexual misconduct case had been reversed.  (See D.E. 1-2 at 14-23 and D.E. l-3 at 1-18). Plaintiff testified that, as of the date of the *Spears* hearing, the flag had been removed and he now had access to the law library.

For relief, plaintiff is seeking between $1,000 to $10,000 against each defendant and a permanent injunction to prevent them from violating his rights.  (D.E. 1 at 4).

---

[7] On March 6, 2013, Assistant Warden Barber denied plaintiff's grievance against Officer Hackman.  (D.E. 1-2 at 4).  Plaintiff filed a Step 2 appeal, and it was denied.  (D.E. 1-2 at 5-6).

III.    **DISCUSSION**.

    A.    **Legal standard.**

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted.  42 U.S.C. § 1997e(c)(2).  "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).  The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed.  *Id.*

    B.    **Official capacity claims.**

Plaintiff states that he is suing the five named defendants in both their official and individual capacities for monetary damages and for injunctive relief.

It is well established that the Eleventh Amendment bars a suit for money damages against a state or state agency.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996).  An action against a state official in his or her official capacity is, in actuality, an action against the State itself, and is therefore barred by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity to TDCJ-CID officers and officials acting in their

official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities); *Augilar v. TDCJ*, 160 F.3d 1052, 1054 (5th Cir. 1998) (same).  Thus, to the extent plaintiff is suing any defendant in his or her official capacity for money damages, those claims are barred by the Eleventh Amendment.  As such, it is respectfully recommended that plaintiff's claims for money damages against all defendants in their official capacities be dismissed with prejudice as barred by the Eleventh Amendment.

### C.   42 U.S.C. § 1997e(e) prohibits compensatory monetary damages absent physical injury.

Under federal law, prisoners may not seek damages for mental or emotional injury unconnected with any physical injury.  *See*  42 U.S.C. § 1997e(e) ("No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury.") However, "[t]he prohibitive feature of § 1997e(e), requiring physical injury before recovery, does not apply in the context of requests for declaratory or injunctive relief sought to end an allegedly unconstitutional condition of confinement." *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001).

Plaintiff claims that he is seeking a "permanent injunction" to enforce his constitutional rights, as well as compensatory and punitive damages against the defendants.  (D.E. 1 at 4).  Despite the evidence that plaintiff was wrongfully convicted of a disciplinary case that was later set aside, he fails to allege that his time in solitary confinement or his loss of craft shop privileges caused him any physical injury.  In *Oliver*

*v. Scott*, 276 F.3d 736, 747 n. 20 (5th Cir. 2002), the Fifth Circuit applied § 1997e(e)'s damage limits to a prisoners' Eighth Amendment claims and noted that it had not considered its applicability to constitutional violations usually unaccompanied by physical injury, such as First Amendment retaliation claims, privacy claims, and equal protection claims.  However, in *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005), the Fifth Circuit held that § 1997e(e) applies to ***all*** federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury.  The *Geiger* court dismissed the prisoner's First Amendment claim alleging mental anguish, emotional distress, psychological harm, and insomnia allegedly caused from a dispute with prison officials over withheld mail, as barred by § 1997e(e).

Here, plaintiff complains of defendants' harassment, abuse of authority, and conspiracy to violate his rights, but he fails to allege any physical injury arising from that conduct.  Absent a physical injury, plaintiff cannot seek compensatory damages against defendants, and it is therefore recommended that his claims for such be dismissed.  However, section 1997e(e) does not bar plaintiff's claims for nominal and punitive damages, or for injunctive relief. *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).  Thus, the merits of plaintiff's claims against the individual defendants will be addressed.

### D.    Plaintiff fails to state cognizable claims against Warden Currie.

Plaintiff claims that Sergeant Mayer, Warden Barber, Officer Hackman and Ms. Moore have participated in a conspiracy to harass, threaten and discriminate against him,

and to retaliate against him for filing grievances, in violation of his constitutional rights. He claims that Warden Currie, as the senior warden at the McConnell Unit, is aware of the illegal conduct of his employees, but has allowed it to continue, such that he is liable for their actions.

To state a cause of action under § 1983, a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). In addition, it is well established that a § 1983 plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*. *Beattie v. Madison County School Dist.*, 254 F.3d 595, 600 n.2 (5th Cir. 1983) (citing *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978)). "[S]upervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "[Section] 1983 does not give a cause of action based on the conduct of subordinates. Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897 (1983). A supervisor who is not personally involved is liable under the theory of "supervisory liability" only if he has implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that

causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.,* 977 F.2d 924, 929 (5th Cir. 1992).

At the *Spears* hearing, plaintiff admitted that he has never spoken to Warden Currie personally, nor does he suggest that Warden Currie has implemented any unconstitutional policy.  He claims that he wrote I-60's to Warden Currie, but that he failed to respond.  However, the fact that plaintiff might have directed an I-60 complaint to Warden Currie does not equate with Warden Currie being personally involved in a constitutional violation.  Indeed, the Fifth Circuit has held that, given the size of the TDCJ and the operations that wardens oversee, they cannot be expected to intervene personally in response to every inmate complaint or letter they receive.  *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004).   In addition, as discussed in more detail below, a prisoner has no constitutional right to receive a response to a grievance.  *Supra, Geiger*, 404 F.3d at 373 (prisoners do not have a federally protected liberty interest in having grievances investigated or resolved).  Plaintiff is attempting to hold Warden Currie liable for the allegedly unconstitutional actions of his subordinates, and § 1983 expressly prohibits such supervisor liability.  Thus, it is respectfully recommended that plaintiff's claims against Warden Currie be dismissed with prejudice for failure to state a claim and/or as frivolous.

### E.  Remaining claims against the remaining defendants.

### (1) Threats, false claims, and grievance investigations.

Plaintiff claims that Sergeant Mayer coerced and/or threatened him to plead guilty to the sexual misconduct charge, and after he refused to do so, he was charged with a

false disciplinary case.  However, even if true, these alleged actions do not give rise to actionable constitutional claims.  It is well established that mere allegations of verbal abuse do not present actionable claims under § 1983.  *Calhoun v. Hargrove,* 312 F.3d 730, 734 (5th Cir. 2002).  Indeed, "mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation."  *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (citation omitted).  Thus, to the extent plaintiff claims that Sergeant Mayer attempted to verbally bully him to confess to the sexual misconduct charge, he fails to state a constitutional violation.

Moreover, the fact Sergeant Mayer charged plaintiff with a disciplinary offense that was later set aside does not give rise to § 1983 liability. Indeed, the Supreme Court has held effectively that there is no free-standing constitutional right to be free from malicious prosecution.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  *But see, Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003) (en banc) (acknowledging that although there is no constitutional claim based on the tort of malicious prosecution, *Albright* does not necessarily defeat a plaintiff's due process claim that the state manufactured evidence or knowingly used perjured testimony).  In the context of state prison, there is no federal constitutional right to be free from false disciplinary charges.  *Espinoza v. Benoit*, 108 Fed. Appx. 869, 871 (5th Cir. 2004) (noting that if only "some evidence" is required to support a disciplinary *conviction*, then clearly investigators are not required to obtain a higher level of proof to merely *initiate* a disciplinary charge).  Indeed, a prison official is not constitutionally prohibited from bringing even a patently false disciplinary charge unsupported by any evidence.  *Palmisano v. Bureau of Prisons*, 258 Fed. Appx. 646, 648

(5th Cir. 2007) (noting that a prisoner's assertion that defendants brought false charges against him does not alone implicate his constitutional rights).

Plaintiff claims also that Sergeant Mayer failed to investigate properly the sexual misconduct case at the onset.  However, even if Sergeant Mayer did not conduct a sound investigation but relied only on an anonymous complaint and a questionable video recording, plaintiff fails to state an actionable claim against Sergeant Mayer because plaintiff does not have a constitutional right to have his grievances investigated. The Supreme Court has held that a prisoner "has a liberty interest only in freedom from restraint ...  imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The Fifth Circuit has relied on *Sandin* to find that a prisoner has no federally protected liberty interest in having his prison grievances investigated or answered favorably.  *Supra Geiger*, 404 F.3d at 374 (prisoner's allegation that he has a constitutionally protected right to have his grievance investigated and resolved is without merit because resolution of the grievance does not involve a "significant hardship ... in relation to the ordinary incidents of prison life.").  *See also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state.").

Similarly, to the extent plaintiff claims that Officer Hackman filed a false disciplinary case against him, this allegation, in and of itself without regards to the claim

of retaliation, fails to state a constitutional violation.  *Castellano*, 352 F.3d at 939.  Nor do plaintiff's allegations that Warden Barber failed to investigate his grievances implicate constitutional protections.  *Geiger*, 404 F.3d at 373-74.

**(2)  Denial of access to the courts.**

Plaintiff claims that Ms. Moore denied him access to the law library hindering his ability to prepare this lawsuit.  However, to prevail on a denial of access to the courts claim under § 1983, a plaintiff must show that he suffered an "actual injury."  *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citing Lewis, 518 U.S. at 351-54).  The plaintiff must identify a "nonfrivolous," "arguable" underlying claim that he has been unable to pursue.  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  Absent an actual injury through prejudice as a litigant in a pending litigation or inability to transmit legal documents, a plaintiff is not entitled to relief based on a claim of denial of access to the courts.  *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993).

Plaintiff testified that once the sexual misconduct charge was set aside, he sought to go to the library so he could research the claims he raises in this action.  He related that, as a consequence of the sexual misconduct charge, there was an administrative "flag" on his record, and that Ms. Moore denied him access on this basis. However, plaintiff persisted in filing grievances and, eventually, he was able to have the flag removed and to gain access to the law library.  Although plaintiff may have desired to file this lawsuit earlier, he did not suffer any prejudice in filing his claims well within a year of the sexual misconduct charge that starting this unfortunate chain of events.  He was able to exhaust his administrative remedies and to prepare and file this lawsuit with no

concerns regarding the statute of limitations or other prejudice.  That is, even if there was some delay in his bringing his lawsuit, Ms. Moore's actions did not cause plaintiff to suffer any prejudice in any pending non-frivolous litigation.  Thus, plaintiff's First Amendment claims against Ms. Moore are properly dismissed for failure to state a claim.

### (3)    Retaliation.

Plaintiff contends that Officer Hackman filed the out-of-place disciplinary case against him in retaliation for plaintiff filed a grievance against Officer Hackman concerning the craft shop.

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights.  *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008), quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006).  "A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing  *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998). The purpose of allowing retaliation claims under § 1983 is to

ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris*, 449 F.3d at 686. However, some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Id.* Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. *Id.* at 687.

Here, the chronology of events supports plaintiff's claim of retaliation. On January 14, 2013, plaintiff filed a Step 1 grievance challenging Officer Hackman's refusal to reinstate his craft shop privileges. (D.E. 1-1 at 20-21). Less than a month later, on February 1, 2013, Officer Hackman filed the out-of-place charge against plaintiff, and after learning that it was not processed, he re-filed the charge and expressly told plaintiff that he was pursuing the minor case because plaintiff had filed the grievance against him. That is, Officer Hackman essentially admitted to plaintiff that he filed the minor disciplinary case against him in retaliation for plaintiff filing the January 14, 2013 grievance. However, finding that Officer Hackman's actions were clearly motivated by retaliatory intent, plaintiff fails to establish a successful retaliation claim because the injury he suffered as a result of the retaliation, a verbal reprimand and 5 days loss of recreation, is no more than a *de minimis* injury.

The Fifth Circuit has not specifically defined "the quantum of injury necessary to constitute an 'adverse act' for purposes of a retaliation claim. *Hart v. Harrison*, 34 F.3d 762, 764 (5th Cir. 2003). However, the frequency and length of the retaliatory action are

to be considered. *Id.*  For example, in *Hart*, the Fifth Circuit found that 27 days of cell restriction and loss of commissary privileges was not *de minimis*.  *Id.* at 765.  But three years later, in the 2006 Morris decision, the Fifth Circuit concluded that a 10-day loss of commissary privileges was no more than a *de minimis* adverse act.  *Morris*, 449 F.3d at 686.  The Fifth Circuit has found that the denial of two meals over an eight-month period is *de minimis* and cannot support a claim of retaliation.  *Romero v. Lann*, 305 Fed. Appx. 242, *1 (Dec. 28 2008) (unpublished).  Similarly, a single incident in which a prisoner is not allowed to eat is *de minimis.*  *Dickerson v. Johnson*, 234 F.3d 29 (5th Cir. 2000).  Denial of recreation on one occasion is a *de minimis* injury and does not constitute an "adverse retaliatory act," for purposes of stating a retaliation claim.  *Cf. Ford v. Jones*, 2006 WL 3488954 (S.D. Tex. 2006) (unpublished), citing *Morris*, 449 F.3d at 686.

Here, Officer Hackman's adverse retaliatory act of filing a minor disciplinary case against plaintiff resulting in plaintiff's 5-day loss of recreation and a verbal reprimand is no more than *de minimis.*  Indeed, Officer Hackman's arguably petty conduct did not "chill" plaintiff from filing grievances, filing this lawsuit, or otherwise attempting to exert his constitutional rights.  Moreover, plaintiff admitted that he was chasing a piece of paper and he was arguably out-of-place when Officer Hackman observed him and then decided to give him a disciplinary case.   Considering the facts in the light most favorable to plaintiff and all of his assertions as true, his retaliation claim against Officer Hackman cannot stand because plaintiff's resulting injury was no more than *de minimis*.

### (4)    Conspiracy and discrimination.

Plaintiff claims that Sergeant Mayer, Warden Barber, Officer Hackman and Ms. Moore engaged in a conspiracy to violate his rights and to discriminate him by keeping him out of the craft shop.

To prove a conspiracy claim cognizable under §1983, a prisoner-plaintiff is required to show that the defendants had "an agreement to commit an illegal act which resulted in the plaintiff's injury." *Hay v. City of Irving, Tex.*, 893 F.2d 796, 799 (5th Cir. 1990).  The Fifth Circuit has stated that specific facts must be pled when a conspiracy is alleged.  *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986).  To establish a cause of action based on conspiracy, a plaintiff must show that defendants agreed to commit a criminal act.  *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982).  Conclusory allegations of conspiracy will not support a claim under § 1983.  *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992).  In addition, to recover on a claim of conspiracy, the Fifth Circuit has held that there must be an actual deprivation of a constitutional right; a mere conspiracy to deprive is insufficient.  *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984).

Accepting plaintiff's allegations as true, plaintiff fails to demonstrate that defendants acted together to deprive him of a constitutional right, that he was deprived of a constitutional right, or that defendants agreed to commit a criminal act.  Plaintiff is, understandably, upset that his craft shop privileges were terminated as a consequence of his being charged with the sexual misconduct disciplinary case.  However, as plaintiff is

well aware, he has no ***constitutional right*** to craft shop privileges.  Indeed, the Standard

Operating Procedures for the Craft Shop Program expressly states:

> **III.   REVOCATION/SUSPENSION   OF   CRAFT
> PRIVILEGES:**  As stated earlier, participation in the Craft
> Program is a privilege and as such, the warden may at any
> time revoke or suspend an offender's piddling privileges.
> Offenders   whose   piddling   privileges   have   been
> administratively revoked will not be eligible to participate in
> the craft program for at least a six (6) month period.  Any of
> the   following   shall   be   sufficient   reason   for   the
> revocation/suspension of an offender's piddling privileges.
> . . . . .
> B.  Disciplinary convictions: One (1) Major or Two Minor
> cases in a six (6) period.

(D.E. 1-1 at 18).

Plaintiff's craft shop privileges were revoked/suspended when he was charged

with the sexual misconduct case.  Plaintiff then successfully challenged and overturned

the sexual misconduct disciplinary conviction, but defendants did not automatically

reinstate, and in fact, refused to reinstate his craft shop access.  However, plaintiff has no

constitutional right to participate in the craft shop.  *See Sandin*, 515 U.S. at 484.  Thus,

because plaintiff fails to establish a constitutional violation, he cannot succeed on his

conspiracy claim.   Moreover, because all of the defendants are employees at the

McConnell Unit, the alleged conspiracy does not involve an agreement between two or

more people, such that there is no conspiracy.  *See Hillard v. Ferguson*, 30 F.3d 649,

652-53 (5th Cir. 1994) (where are defendants are members of the same collective entity,

the conspiracy does not meet the requirement of an agreement between two or more

persons).   Plaintiff offers no facts, other than his personal belief, that there is a conspiracy, and such allegations fail to state a claim.  *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989) (conclusory allegations lacking reference to material facts are not sufficient to state a claim of conspiracy under § 1983).

Related to his conspiracy claim, plaintiff testified that defendants were motivated to violate his constitutional rights and to deny him reinstatement of his craft shop privileges because he is Hispanic.

Inmates have the constitutional right to be free from racial discrimination.  *Bently v. Beck*, 625 F.2d 70, 71 (5th Cir. 1980).  To state a claim for denial of equal protection, a plaintiff must allege, *inter alia*, that similarly situated individuals have been treated differently and he must also allege purposeful or intentional discrimination.  *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007).   A prisoner-plaintiff cannot base an equal protection claim solely on a personal belief that he was a victim of discrimination, and vague and conclusory allegations are insufficient to raise an equal protection claim.  *Supra,  Woods*, 51 F.3d at 580.

Plaintiff has failed to offer any facts to suggest that the decision to not reinstate his craft shop privileges was motivated by race. He does not suggest that prison officials award craft shop privileges more readily to non-Hispanic prisoners or that they terminate the privileges of more Hispanic prisoners in comparison to the general population. Moreover, until the sexual misconduct charge, plaintiff had enjoyed craft shop privileges since 1992 without any perceived discrimination.  Finally, plaintiff testified that there is a long waiting list for craft shop access.  Plaintiff's allegations do not suggest that the

actions of defendants were motivated by purposeful discrimination.  Thus, he fails to state a cognizable equal protection claim.

## IV.   Recommendation.

For the reasons stated above, it is respectfully recommended that plaintiff's alleged constitutional claims against the named defendants be dismissed with prejudice for failure to state a claim upon which relief can be granted and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).  For these same reasons, it is respectfully recommended further that plaintiff's motion for a preliminary injunction (D.E. 13), and all other pending motions be denied as moot.

Respectfully submitted this 23rd day of September, 2013.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).